## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**VICTORIA C. REDDICK**                                                    **PLAINTIFF**

**VS.**                                                         **CIVIL ACTION NO.:** _____

**SAINT DOMINIC HOSPITAL,**
**and JOHN DOES 1-10**                                          **DEFENDANTS**

### COMPLAINT
### (*Jury Trial Demanded*)

The Plaintiff, VICTORIA C. REDDICK, files her Complaint against Saint Dominic Hospital and John Does 1-10, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. C. § 2000e-5(f), to correct unlawful employment practices as well as retaliatory actions for her lawful exercise of seeking relief for such practices by filing an internal grievance with Saint Dominic Hospital, and to provide Plaintiff with appropriate relief as a result of being adversely affected by such actions, stating as follows:

### I.
### THE PARTIES

1.   That Plaintiff Victoria C. Reddick (Ms. Reddick) is an adult female resident citizen of Jackson, Hinds County, Mississippi.

2.   That Defendant, Saint Dominic's Hospital ("St. Dominic") is a corporation organized and existing under the laws of the State of Mississippi located at 969 Lakeland Drive, Jackson, Mississippi 39216.  St. Dominic is engaged in providing health care to persons injured or suffering various kinds of illnesses.  St. Dominic can be served with the process of this Court service upon its Registered Agent, Mary Dorothea Sondgeroth at her business address, 969 Lakeland Drive, Jackson, Mississippi 39216.



EXHIBIT
"B"

3.  That at all times relevant, St. Dominic continuously employed at least fifteen (15) employees. St. Dominic, through its use of these employees, was engaged in businesses affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S. C. § 2000e-5(f).

4.  That Defendants John Does 1-20 are individuals and or entities of whatever kind, whose actions and/or identities are unknown to Plaintiff, and such actions caused or contributed to the injuries and damages complained of herein. The Doe Defendants will be served with the process of this Court when their actions and identities are discovered in accordance with the requirements of the applicable provisions of the Federal Rules of Civil Procedure.

## II.
## JURISDICTION AND VENUE

5.  That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

6.  That the jurisdiction of this Court is invoked pursuant to 28 U. S. C. §§ 1331and 1343 as this action arises under laws of the United States of America and this action is commenced to recover damages and/or equitable relief under an Act of Congress which provides for the protection of civil rights.  Venue is proper under 28 U.S.C. § 1391(b)(2) as the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Mississippi, Jackson Division.

## III.
## FACTS

7.  That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

8.  That Ms. Reddick began her employment with St. Dominic on September 12, 2014 as a lab assistant.  In this position, Ms. Reddick was required to process specimens, collect specimens and login

specimens. During her work employment with St. Dominic, she always received good evaluations with respect to her work.

9.    That in October 2014, Shaun White asked Ms. Reddick offered to give her $1400 to pay her traffic tickets. When she declined this offer Shaun White said she could consider it an early Christmas gift that she could keep between the two of them. He then stated that she was very attractive and he would like to get to know her outside of work.    Ms. Reddick explained that she had been in a relationship for 10 years and was not interested. He then said he could change that.

10.    That on Friday of that week, Shaun White decided that he was going to give Plaintiff $700 towards her traffic tickets. At the end of my work day, however, Plaintiff clocked out and began to walk to her car.  Plaintiff saw him following her and began to walk rapidly so that he could not catch up to her.  She also began talking with the housekeeper so Shaun White wouldn't approach her with the money.

11.    That Shaun White later offered to pay to get Plaintiff's nails done and she told him no.  He then told Plaintiff he didn't mind doing things for her because he liked her and he could get her nails done that day.  Again Plaintiff told him no and asked him not to offer to give or buy anything for her again.

12.    That about a month later, Shaun White offered to pay to get Plaintiff's hair done. Once more, she told him no and asked him to stop offering her things.  Shaun White was visibly upset with Plaintiff for constantly rebuffing his repeated attempts to gain sexual favors with her.

13.    That on May 12, 2015, Shaun met with Ms. Reddick and asked her why she was being late for work. She explained that she had to drop her kids off to their grandmother's home in Terry, Mississippi and construction on I-55 caused her to be delayed.  Plaintiff then asked him if she could begin to come in at 05:30 a.m.  Ms. Reddick knew he had given Percilla Tucker, another female lab assistant, permission to come to work at a later time.

14.   That despite telling Ms. Reddick that she could come in at 05:30 a.m., on June 17, 2015, Shaun White called her into his office and questioned her about her arrival time.   She reminded him that he had given her permission to come in at 05:30 a.m.   He then gave her a Written Disciplinary Citation in which he noted that she had been late for work 06/03, 06/04, 06/09, 06/10, 06/14, 06/15, and 06/16. Therefore she had accumulated 8 points within a 180 day period in violation of St. Dominic policy.

15.   That Ms. Reddick then decided to talk with Shaun Wade's supervisor, Darren Carley, about this situation. When she did so, she learned that Darren Carley was unaware that Shaun White had told her she could begin her work day at 05:30 a.m. as opposed to 05:00 a.m. Ms. Reddick explained to Darren that for 6 weeks, Shaun White had told her that Shaun had talked to Darren about this situation and he was waiting on him to make a decision.   Darren Carley told Ms. Reddick he would speak with Shaun and not to worry about it.

16.   That in June 2015, Ms. Reddick met with Darren Carley once again to discuss her reporting time for work.   During this meeting, Darren mentioned that there was a position open in the IMG lab. Because the hours for this job were too late in the evening for her and her children, Ms. Reddick decided not to pursue this position.   Darren then told her about a position in the outpatient lab where the hours were from 05:30 a.m. to 2:00 p.m. Monday through Friday. Ms. Reddick told Darren Carley she wanted that position.

17. That Shaun White, Kim Trimble who was Shaun's immediate supervisor, and Darren Carley interviewed Ms. Reddick for the outpatient lab position and they all agreed that she was the best suited for this position.   A few days later while Darren Carley was off work, Shaun gave this position to a person who had been hired for less than a month, Tiesha (last name unknown).   Ms. Reddick learned sometime later that Shaun had told Phyllis Nichols and Percilla Tucker that he was going to make sure that she, Ms. Reddick, did not get the outpatient lab position.

18. That in or about July 205, Shaun told Ms. Reddick he liked the way she wore her uniforms. When she asked him what he meant, Shaun stated that he liked the way they were hugging her as*. Ms. Reddick told him that it appeared that he didn't care what or how he spoke and he replied that no, he really did not. Disgusted, she walked away.

19. That in or about April or May 2015, Shaun heard Phyllis Nichols and Ms. Reddick talking about working out at the gym to flatten their stomachs. Shaun told them he knew a way to do that and got on the floor and demonstrated a particular exercise. After Phyllis walked away, Shaun told Ms. Reddick he knew another way to flatten her stomach. When she asked him how, he wrote on a sticky tab, "a lot of dic** riding." He showed it to her, balled the paper up and put in his pocket. The following Monday he asked Ms. Reddick if either of one of those things he told her worked.

20. That in or about October 2015, Percilla Tucker and Phyllis Nichols told Ms. Reddick that Shaun showed them a picture of his brother and asked if they looked alike. He told them he was asking because he planned to get Ms. Reddick intoxicated and let his brother have his way with her. Shaun White also told them that he had his eyes set on Ms. Reddick. When she learned of this, Ms. Reddick immediately reported this information to Saint Dominic's Vice President, Lamar Nesbit, via email.

21. That on numerous occasions, Ms. Reddick would go into a patient's room to perform her work and then see Shaun standing at the patient's door. He would come onto the floor on which she was working and stare at her without saying a word. After she would make eye contact with Shaun, he would leave the floor. Shaun also changed Ms. Reddick's schedule so that she was required to work 10-12 days straight without overtime pay.

22. That in or about October 2015, Ms. Reddick met with Shaun, Kim Trimble and Phyllis Nichols. Phyllis was at the meeting to corroborate some of the actions Shaun had taken towards Ms. Reddick. She explained that because of Shaun's actions, she was extremely fearful of losing her job and

how uncomfortable she was working with him. Nevertheless, Kim Trimble told Ms. Reddick that she had to work with Shaun and there was no way around it. If she could not, Ms. Reddick might need to find somewhere else to work. Ms. Reddick also communicated her concerns to Lamar Nesbitt on that same day or a few days later when she filed her grievance.

23. That while Shaun White was constantly harassing Ms. Reddick, he was providing Phyllis with special privileges. She was allowed to come to work late; miss work; clock in upfront outside the lab; time off requests were always approved; she could take a week off without going on vacation; and she worked on the days she preferred. She received such treatment because of a sexual relationship she had with Shaun.

24. That on August 21, 2015, Shaun White gave Ms. Reddick a Final Disciplinary Citation. According to this document, Ms. Reddick had been late for work on 07/07, 07/11, 07/14, 07/25, 07/26, 08/17, 08/19 and 08/20, 2015. Therefore she had accumulated 8 points within a 180 day period in violation of St. Dominic policy. In addition, it provided that further violation of this policy could result in further disciplinary action including termination. Ms. Reddick refused to sign this citation.

25. That on October 16, 2015, Ms. Reddick filed an internal grievance with St. Dominic. Ms. Reddick alleged that she was the victim of sexual harassment at the hands of her male supervisor, Shaun White. The basis of this complaint was that after she constantly rebuffed the unwanted advances of Shaun White, she was subjected to different terms and conditions of her employment and she received unwarranted disciplinary actions. On information and belief, Lamar Nesbitt was in charge of investigating this grievance but he never got back to Ms. Reddick to give her his findings.

26. That on November 19, 2015, Kim Trimble and Tammy Brown from Human Resources gave Ms. Reddick a Termination Disciplinary Citation. This document advised Reddick that she was being terminated as a result of a written citation on June 6, 2015, a Final Citation on August 20, 2015, and being tardy for work on 08/21, 09/09, 10/15, 10/16, 10/20, 11/02, 11/06 and 11/07, 2015. Therefore she

had accumulated 8 points within a 180 day period in violation of St. Dominic policy.  Ms. Reddick refused to sign this citation as well.

27.  That at all times relevant, St. Dominic employees enjoyed a seven minute grace period from their assigned time to be at work to clock in without being penalized.  Despite being aware of this policy, St. Dominic allowed Shaun White to charge Ms. Reddick with being late on numerous occasions when she was well within this grace period.  On information and belief, at other times Shaun White used his authority to access Ms. Reddick's electronic time records and altered them to show that she was late clocking in when she was not.

28.  That almost since the time when she was hired at St. Dominic in September 2014, Ms. Reddick was the victim of Shaun Whites almost constant sexual harassment.

29.  That on or about December 4, 2015, Ms. Reddick filed a Charge of Discrimination with the EEOC.  She charged that St. Dominic discriminated against her on the basis of her sex and then retaliated against her for filing her internal grievance with St. Dominic. Ms. Reddick received a Notice of Right to Sue Letter from the EEOC dated April 3, 2017.   The EEOC made no determination as to whether it could substantiate the presence of discrimination as charged in Ms. Reddick's complaint.

30.  That the actions of St. Dominic deprived Ms. Reddick of equal employment opportunities and otherwise adversely affected her employment.  It then retaliated against her  because she challenged and opposed the sexual harassment to which she was subjected which violated Title VII.  Such practices were done with malice and/or with reckless disregard for Ms. Reddick's federally protected rights.

31.  That Ms. Reddick has complied with all judicial prerequisites prior to the filing of this action based upon her Title VII claim and that she did so in a timely manner and in accordance with his "*Notice of Right to Sue*" issued in regard to Charge of Discrimination.

32. That Ms. Reddick seeks any and all relief available to her under federal law, and in particular Title VII, including but not limited to back pay, actual and compensatory damages, attorney's fees and any other relief available to Plaintiff is entitled under Title VII.

## IV.
## CAUSES OF ACTION

### COUNT I: (SEXUAL HARRASSMENT)

33. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

34. That Ms. Reddick is a member of a protected group as a female. She was subjected to unwelcomed sexual harassment, including sexual advances, requests for sexual favors, and other conduct of a sexual nature. This harassment was based on her sex.

35. That because the Plaintiff refused to submit to these sexual demands, she was subjected to tangible employment actions in that she was forced to work long hours without days off and without overtime pay to which she was entitled, she was denied a position to which she was vastly more qualified that the person who received the job, her employment was terminated, and she was otherwise she was treated less favorably than other employees due to her sex. The reasons given for her termination were pretexts for St. Dominic's unlawful discrimination.

### COUNT II: (RETALIATION)

37. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

38. That Ms. Reddick participated in statutorily protected activity in submitting a grievance regarding the discrimination to which was subjected; she suffered an adverse employment action as a result of her exercising her right to engage in this protected activity as she was terminated from her employment; and there was a causal connection between the protected activity and the adverse action.

**COUNT III: (ATTORNEY'S FEES )**

39.  That it was the legislative intent of Congress to routinely award attorney's fees as part of the costs in order to encourage and reward private enforcement of civil rights.   There are no special circumstances in this case which would justify a denial of attorney's fees.   Upon prevailing on the claims predicated under  Title VII, Ms. Reddick is entitled to an award of attorney's fees.

**V.**
**DEMAND FOR JURY TRIAL**

40. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

41. That the Plaintiff hereby requests a jury trial on all questions of fact that are raised in his Complaint.

**IV.**
**PRAYER FOR RELIEF**

42. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Victoria C. Reddick respectfully requests that she be made whole by ordering Defendant St. Dominic to provide the following:

a.  Back pay with pre and post judgment interest in an amount to be determined at trial;

b.  Compensation for past and future pecuniary losses resulting from the unlawful employment practice complained of herein;

c.  Punitive damages for its malicious and reckless conduct described herein in the amount of $1,000,000.00;

d.  Attorneys' fees, costs, and expenses; and

e.  Grant such other, further, and different relief as the Court deems just and proper under the premises.

**RESPECTFULLY SUBMITTED,** this ___ day of _____, 2018.

**VICTORIA C. REDDICK, PLAINTIFF**

**BY:** _____
      **OTTOWA E. CARTER, JR. (MSB # 8925),**
      **Her Attorney**

**OF COUNSEL:**

OTTOWA E. CARTER, JR., P.A.
604 Hwy 80 W., Suite N (39056)
P. O. Box 31
Clinton, MS 39060
Tel: (601) 488-4471
Fax: (601) 488-4472
Email:oec@ottowacarterlaw.com